1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

GUY M.,

Plaintiff,

9

v.

10

COMMISSIONER OF SOCIAL SECURITY,

11

Defendant.

12

Case No. C19-5242 JCC

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR
FURTHER PROCEEDINGS

13      Plaintiff seeks review of the denial of his applications for Supplemental Security Income

14  and Disability Insurance Benefits.  Plaintiff contends the ALJ erred by rejecting his testimony,

15  his treating doctor's opinions, and his wife's testimony.  Dkt. 9.  As discussed below, the Court

16  REVERSES the Commissioner's final decision and REMANDS the case for further

17  administrative proceedings.

18  I.      BACKGROUND

19      Plaintiff is currently 55 years old, has a high school education, and has worked as a

20  school bus driver and stores laborer.  Dkt. 7, Admin. Record (AR) 955.  Plaintiff applied for

21  benefits in March 2014, and alleges disability as of January 1, 2014.  AR 227, 942.  Plaintiff's

22  applications were denied initially, on reconsideration, and by a February 2016 ALJ decision.  AR

23

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 1

1   225, 226, 247, 248, 143-52.  On appeal to this court, based on the parties' stipulation, the court

2   remanded the case for further administrative proceedings.  AR 1097-99.  On remand, after the

3   ALJ conducted a hearing in June 2018, the ALJ issued a decision finding Plaintiff not disabled.

4   AR 1016, 942-57.

5   II.   THE ALJ'S DECISION

6        Using the five-step disability evaluation process,[1] the ALJ found:

7   **Step one:**  Plaintiff has not engaged in substantial gainful activity since the January 2014
    alleged onset date.

8

9   **Step two:**  Plaintiff has the following severe impairments: lumbar spine degenerative disc
    disease; large intestine cancer, status-post chemotherapy; and peripheral neuropathy.

10  **Step three:**  These impairments do not meet or equal the requirements of a listed
    impairment.[2]

11

12  **Residual Functional Capacity:**  Plaintiff can perform light work, standing and/or
    walking for 4 hours per day.  He cannot crouch, crawl, or climb ladders, ropes, or
    scaffolds.  He can occasionally climb ramps and stairs, balance, stoop, and kneel.  He

13  must avoid concentrated cold, vibration, and hazards.  He cannot drive as part of normal
    job duties.  He must ambulate with a cane, with the other hand free to use.  He requires an

14  option to alternate sitting and standing after 30 to 60 minutes, for 3 to 5 minutes while
    remaining on task.

15  **Step four:**  Plaintiff cannot perform past relevant work.

16

17  **Step five:**  As there are jobs that exist in significant numbers in the national economy that
    Plaintiff can perform, he is not disabled.

18  AR 945-57.[3]

19  III.  DISCUSSION

20       This Court may set aside the Commissioner's denial of Social Security benefits only if

21

22  [1] 20 C.F.R. §§ 404.1520, 416.920.
    [2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

23  [3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

1 the ALJ's decision is based on legal error or not supported by substantial evidence in the record

2 as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence" is

3 more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable

4 mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389,

5 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible

6 for evaluating evidence, resolving conflicts in medical testimony, and resolving any other

7 ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the

8 Court is required to examine the record as a whole, it may neither reweigh the evidence nor

9 substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir.

10 2002). This Court "may not reverse an ALJ's decision on account of an error that is harmless."

11 *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

12       **A.**      **Richard Faiola, M.D.**

13       A treating physician's opinion is generally entitled to greater weight than an examining

14 or nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. An ALJ may only reject the

15 contradicted opinion of a treating doctor by giving "specific and legitimate" reasons. *Revels v.*

16 *Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a

17 detailed and thorough summary of the facts and conflicting clinical evidence, stating his

18 interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more

19 than offer his conclusions. He must set forth his own interpretations and explain why they,

20 rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

21       In June 2016, Plaintiff's treating physician, Dr. Faiola, opined that Plaintiff's

22 impairments caused "easy fatigue, poor balance, [and] lack of stamina." AR 1472. He checked

23 a box opining that Plaintiff could perform "sedentary work" and wrote that Plaintiff could only

work "a few hours at most 2-3 days a week at light activities." AR 1473-74. The ALJ gave Dr. Faiola's opinions "little weight" as inconsistent with evidence that Plaintiff's "energy level was restored to baseline," and that Plaintiff could "perform daily activities without difficulty [and] do chores around the house with minimal difficulty." AR 954.

1.      Medical Evidence

Inconsistency with medical evidence can be a sufficient reason to discount a medical opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (affirming rejection of doctor's opinion that was contradicted by her own and other medical examiners' reports). The ALJ cited a treatment note by Plaintiff's chemotherapy doctor, Hui Wang, M.D., stating that Plaintiff reported that his "energy level and appetite have recovered back to his normal baseline." AR 800; AR 952. This treatment note was from a follow-up appointment after completing chemotherapy and radiation. Plaintiff contends that "baseline" refers to the time before chemotherapy, rather than some earlier time when Plaintiff was capable of work. Dkt. 9 at 5. The Commissioner argues this is merely an "alternative interpretation" of the record. Dkt. 13 at 7.

Plaintiff worked until January 2014, when his colon cancer was found. AR 1029. He went to an emergency room on January 9, and underwent emergency surgery. AR 565. Dr. Wang first saw Plaintiff on January 27 and recommended chemotherapy. AR 893. At the request of Dr. Wang, Plaintiff saw Joseph Hartman, M.D., on January 29 to plan radiation therapy in coordination with the chemotherapy. AR 565. Plaintiff told Dr. Hartman that his "energy level is generally diminished since his surgery." *Id*. Plaintiff had his last cycle of chemotherapy on October 13. AR 812. In a March 2015 appointment for follow up, Dr. Wang noted that Plaintiff's "energy level and appetite have recovered back to his normal baseline."

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 4

1  AR 800.  Given that Dr. Wang had not seen Plaintiff before his surgery, a time when Plaintiff's

2  energy level had returned was already diminished, the ALJ's interpretation that "baseline" refers

3  to a time when Plaintiff was able to work is not reasonable.

4      Substantial evidence does not support the ALJ's finding that Plaintiff returned to an

5  energy level that enabled him to work.  Effective treatment was not a specific and legitimate

6  reason to discount Dr. Faiola's opinions.

7          2.      Activities

8      Conflict with a claimant's activities "may justify rejecting a treating provider's opinion."

9  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  The ALJ did not explain, however, how

10  Plaintiff's daily activities or household chores contradict Dr. Faiola's opinions.  The

11  Commissioner argues that the Ninth Circuit has "compared the ability to perform household

12  chores to the ability to perform light work."  Dkt. 13 at 9 (citing *Orteza v. Shalala*, 50 F.3d 748,

13  750 (9th Cir. 199).  The court in *Orteza* held that the ALJ was "clearly allowed to consider the

14  ability to perform household chores," along with many other factors, in evaluating the reliability

15  of a claimant's testimony.  50 F.3d at 750.  This is far from a *per se* rule that a person who can

16  perform household chores is capable of light work.  Here, the ALJ did not identify any conflict

17  between Dr. Faiola's opinions and Plaintiff's daily activities or household chores.  Even if

18  household chores can be comparable to light work, there is no evidence that Plaintiff performed

19  chores anywhere close to eight hours per day, five days per week.  Conflict with Plaintiff's

20  activities was an erroneous reason to reject Dr. Faiola's opinions.[4]

21

22  [4] The Commissioner argues that Plaintiff's walking, woodworking, and yardwork conflicted with Dr. Faiola's opinions.  Dkt. 13 at 9.  The ALJ's decision does not contain such an analysis and the Commissioner's contention is thus an improper *post hoc* argument upon which the Court

23  cannot rely.  The Court reviews the ALJ's decision "based on the reasoning and findings offered

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 5

1    Because the ALJ provided no specific and legitimate reason, the Court concludes the ALJ

2    erred by discounting Dr. Faiola's opinions.

3    **B.      Plaintiff's Testimony**

4          In a 2017 Function Report, Plaintiff wrote that he could do "little things around the

5    house" but only for "about 30 min[utes] to an hour before [he has] to sit down…." AR 1319. At

6    a June 2018 hearing, Plaintiff testified that he cannot bend over properly, due to his colostomy

7    bag, and cannot lift more than 15 pounds. AR 1035-36. He can sit for about an hour. AR 1037.

8    He uses a cane for walking more than 20 yards. AR 1039. He can walk for about 20 minutes

9    before needing to rest for 10 minutes. AR 1042. He can do dishes for about 15 minutes and then

10   needs to rest for 20 minutes before working for another 15 minutes. AR 1047. After about an

11   hour and a half of activity, he needs to lie down for three hours. AR 1046-47. On bad days,

12   about twice a week, he is too tired to do anything. AR 1048.

13         Where, as here, an ALJ determines a claimant has presented objective medical evidence

14   establishing underlying impairments that could cause the symptoms alleged, and there is no

15   affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

16   symptom severity by providing "specific, clear, and convincing" reasons that are supported by

17   substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony based

18   on conflict with his activities and the medical evidence.

19         1.     Activities

20         An ALJ may discount a claimant's testimony based on daily activities that contradict her

21   testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The only activity the ALJ

22   _____

23   by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have
     been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 6

discussed was walking. The ALJ found that Plaintiff's testimony of walking limitations was contradicted by treatment notes showing that Plaintiff reported he "[e]xercises, almost daily. 60 minutes per session. [W]alking." AR 770, 783, 1339, 1522; AR 949-51. However, as Plaintiff argues, there is no evidence that he walks 60 minutes "without intermittent rest periods." Dkt. 14 at 6. Plaintiff testified that outside of treatment he was only able to walk for about 20 minutes before requiring rest. The fact that he engages in walking for 60 minutes "per session" does not necessarily controvert Plaintiff's testimony. This is even more true where the treatment notes do not specify the length of each session or whether breaks were taken. Conflict with his activities was not a clear and convincing reason to discount Plaintiff's testimony.

### 2. Medical Evidence

The ALJ found that Plaintiff's impairments improved with treatment. AR 952-53. Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). Evidence that medical treatment helped a claimant "'return to a level of function close to the level of function they had before they developed symptoms or signs of their [impairments]' … can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00H (2014)).

As discussed above, treatment notes stating that Plaintiff reported that his "energy level and appetite have recovered back to his normal baseline" do not establish that Plaintiff's energy

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 7

level returned to the level he had when he was capable of work.  AR 794; AR 952.

The ALJ also found that Plaintiff's back pain "improved with conservative treatment" of physical therapy and Aleve.  AR 953.  That a claimant "responded favorably to conservative treatment … undermines [his] reports regarding the disabling nature of his pain." *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).  Treatment notes the ALJ cited show that after several physical therapy sessions Plaintiff's back pain "improved to 2/10."  AR 934.  In the next session he had "minimal back pain."  AR 936.  This is substantial evidence supporting the ALJ's finding of improvement with conservative treatment, which was a clear and convincing reason to discount Plaintiff's testimony regarding his back pain.

Although the ALJ did not err by discounting Plaintiff's testimony of back pain, on remand the ALJ must reevaluate Plaintiff's testimony related to fatigue and ability to walk.

## C.    Lay Witness Testimony

An ALJ may discount lay witness testimony by giving a germane reason.  *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).  Lay witness testimony cannot be rejected on the grounds that it lacks support from medical evidence, but it may be rejected if contradicted by medical or other evidence.  *Diedrich*, 874 F.3d at 640; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

In April 2014, Plaintiff's wife filled out a Function Report, writing that Plaintiff could only walk 20 minutes before needing to sit or lie down for an hour, and that he could only grocery shop for 30 minutes and then was worn out for a couple of hours.  AR 430.  She added that "during chemo weeks he is more worn out and sick." *Id*.  The ALJ gave Plaintiff's wife's statement "[l]ittle weight" as "not fully consistent with evidence [that Plaintiff's] energy level was restored to baseline [and that Plaintiff could] perform daily activities without difficulty and

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 8

do chores around the house with minimal difficulty." AR 954. As discussed above, neither of these reasons is supported by substantial evidence. Plaintiff's energy level only returned to the diminished level he had before surgery. The ALJ did not identify any way that Plaintiff's minimal chores contradicted his wife's statements. The Court concludes the ALJ erred by discounting Plaintiff's wife's lay witness statement.

### D. Medical-Vocational Guidelines

Plaintiff argues that his RFC is effectively sedentary because he can only stand/walk four hours per day, and the ALJ erred by failing to apply the Medical-Vocational Guidelines for sedentary work. Dkt. 9 at 6. For a person of Plaintiff's age, education, and previous work experience, the Guidelines mandate a finding of disability if he is limited to sedentary work, and mandate a finding of non-disability if he can perform the full range of light work. 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 201.14, 202.14. Plaintiff's RFC was greater than sedentary because he was able to stand/walk more than two hours per day (and could lift 20 pounds), but less than the full range of light because he could not stand/walk six hours per day. *See* 20 C.F.R. §§ 404.1567(a)-(b); 416.967(a)-(b). Plaintiff was not limited to sedentary work, and thus the Guidelines did not mandate a finding of disability.

Because Plaintiff was unable to perform the full range of light work and had additional nonexertional limitations, the ALJ could not directly apply the Guidelines. Appropriately, the ALJ called a vocational expert at the 2018 hearing to testify to what jobs a person with Plaintiff's RFC could perform. AR 956, 1051; *see* Social Security Ruling 83-12, 1983 WL 31253 at *2-3 (S.S.A. 1983) (when an RFC falls "in the middle," vocational expert assistance is "advisable"). The vocational expert testified that such a person could perform representative occupations of electrical accessories assembler, production assembler, and hand packager/inspector. AR 1052-

53.

Plaintiff argues that the representative jobs are actually sedentary, not light, because they can be done sitting and "do not require 'any significant lifting or carrying'." Dkt. 9 at 6 (quoting AR 1062). This misrepresents the vocational expert's testimony. The expert testified that the jobs do not require significant lifting or carrying "while ambulating." AR 1062. This is relevant because Plaintiff requires a cane in one hand while walking, but not while standing or sitting. AR 946; AR 1060 ("use of one hand would only apply when ambulating"). Plaintiff's RFC permits lifting at a light level with two hands when sitting or standing. AR 946.

In his reply brief, Plaintiff quotes portions of vocational expert testimony from the 2016 hearing. Dkt. 14 at 4 (citing AR 199, 202). This testimony is not relevant, because the ALJ relied on the 2018 testimony of a different vocational expert. *Compare* AR 956 *with* AR 1052.

Plaintiff's argument that the representative jobs are sedentary, not light, fails. The Court concludes the ALJ did not err by relying on vocational expert testimony to conclude that Plaintiff could perform jobs that existed in significant numbers in the national economy.

IV.    SCOPE OF REMAND

Plaintiff requests the Court remand for benefits or, in the alternative, for further administrative proceedings. Dkt. 9 at 12-15. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved

1    before a determination of disability can be made, and whether further administrative proceedings

2    would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)

3    (internal citations and quotation marks omitted).  Only if the first two steps are satisfied, the

4    Court must determine whether, "if the improperly discredited evidence were credited as true, the

5    ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

6    "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as

7    true, it is within the court's discretion either to make a direct award of benefits or to remand for

8    further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

9            While Plaintiff recites the correct legal standard, he fails to apply it properly.  Plaintiff

10   asserts that "there is no evidentiary gap" because he has testified twice and provided medical

11   records.  Dkt. 9 at 13.  The issue, however, is not the quantity of the evidence but that there

12   remain conflicts in the record that the ALJ must resolve.  For example, Dr. Faiola's opinion that

13   Plaintiff could only work part time conflicts with the opinions of state agency doctor Wayne

14   Hurley, M.D., that Plaintiff could work full time.  AR 256-57.  The ALJ gave Dr. Hurley's

15   opinions "great weight."  AR 954.  The Court cannot resolve this conflict.  It is the ALJ's role to

16   resolve conflicts in medical testimony.  *Andrews*, 53 F.3d at 1039.  Moreover, Plaintiff's

17   testimony that he must rest for 10 minutes after walking for 20 minutes conflicts with his wife's

18   statement that he must rest for an hour after walking for 20 minutes.

19           The Court concludes that enhancement of the record would be useful and, accordingly,

20   remand for further proceedings is appropriate.

21   V.      CONCLUSION

22           For the foregoing reasons, the Commissioner's final decision is REVERSED and this

23   case is REMANDED for further administrative proceedings.  On remand, the ALJ must

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 11

reevaluate Plaintiff's testimony, Dr. Faiola's opinions, and Plaintiff's wife's statement; reassess the RFC as necessary; and proceed to step five as needed.

DATED this 12th day of November, 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 12